**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION**

| | | |
|---|---|---|
| JOSEPH M. HERRERA and LINDSAY B. HERRERA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 4:14-CV-00066-NKL |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, NATIONAL ASSOCIATION and KOZENY & MCCUBBIN, L.C., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Kozeny & McCubbin, L.C. ("Kozeny") move to dismiss Plaintiffs Joseph and Lindsay Herrera's Amended Complaint for failure to state a claim. [Doc. # 24]. For the reasons set forth below, Defendants' motion is GRANTED and this case is DISMISSED, with prejudice.

## I. Background

This case arises from an unlawful detainer action against Plaintiffs that was filed by Wells Fargo on November 11, 2013 in Missouri state court. The unlawful detainer action, in turn, arose from Plaintiffs' alleged failure to surrender a property that Wells Fargo purchased at a foreclosure sale on October 31, 2013. Wells Fargo obtained the deed to the property on November 4 and recorded the deed on November 5. That same day, Kozeny, which served as counsel to Wells Fargo for all matters related to the

foreclosure and unlawful detainer action, mailed a letter to Plaintiffs at the foreclosed property demanding that Plaintiffs vacate the property immediately.

Plaintiffs allege that they vacated the property within a few days of receiving the letter from Kozeny and sometime prior to November 11, 2013. On December 6, 2013, Plaintiffs moved for summary judgment in the unlawful detainer action on the ground that they did not occupy the property on or after the date Wells Fargo filed this suit. Wells Fargo voluntarily dismissed its unlawful detainer action against Plaintiffs on December 10, 2013.

Plaintiffs subsequently initiated the present case as a putative class action, alleging that Defendants had no basis in law or fact for filing the unlawful detainer suit and have filed similarly unfounded actions against numerous residents of Missouri. Plaintiffs' Amended Complaint asserts substantive claims for: (1) malicious prosecution; (2) abuse of process; and (3) prima facie tort/intentional infliction of emotional distress.

## II. Discussion

### A. Malicious Prosecution

Defendants argue that Plaintiffs' claim for malicious prosecution must be dismissed because Plaintiffs' allegations show that Defendants had probable cause for filing the unlawful detainer action. The absence of probable cause is an essential element of a claim for malicious prosecution. *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 822 (8th Cir. 2010); *State ex rel. Police Ret. Sys. of St. Louis v. Mummert*, 875 S.W.2d 553, 555 (Mo. 1994). In the context of a civil suit, probable cause is defined as "a reasonable belief in the facts alleged plus a reasonable belief that the claim may be valid under the

applicable law." *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 318 (Mo. Ct. App. 2010) (citing *Mummert*, 875 S.W.2d at 555). The existence of probable cause is thus predicated on the filing party's honest and reasonably held beliefs, not on "what may have ultimately proved to be the actual state of facts." *Id.* (quotation omitted). Nonetheless, parties that file civil suits are held responsible both "for the facts known to them at the time of the filing and for all other facts ascertainable through due diligence." *Brockman v. Regency Fin. Corp.*, 124 S.W.3d 43, 47 (Mo. Ct. App. 2004); *accord Zike v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 646 F.3d 504, 511 (8th Cir. 2011). In addition, "because '[p]roving the want of probable cause involves proving a negative,' Missouri courts have determined that 'the slightest of proof is all that is required to make a prima face case.' " *Zike*, 646 F.3d at 510 (quoting *Fust v. Francois*, 913 S.W.2d 38, 44 (Mo. Ct. App. 1995)).

In this case, Plaintiffs claim that Defendants did not have a reasonable belief in the factual or legal basis of the unlawful detainer action. Under Missouri law, "an action for unlawful detainer is a *limited* statutory action where the sole issue to be decided is the *immediate* right of possession to a parcel of real property." *US Bank NA v. Watson*, 388 S.W.3d 233, 234-35 (Mo. Ct. App. 2012); *accord Fed. Nat'l Mortg. Ass'n. v. Wilson*, 409 S.W.3d 490, 495 (Mo. Ct. App. 2013). To succeed on a claim for unlawful detainer following foreclosure, the plaintiff must show "(1) that the property was purchased at a foreclosure sale, (2) the defendant received notice of the foreclosure, and (3) the defendant refused to surrender possession of the property." *Wilson*, 409 S.W.3d at 495.

Plaintiffs allege that Defendants lacked probable cause only as to the third element of a claim for wrongful foreclosure—refusal to surrender the property. Defendants maintain that they necessarily had probable cause as to this element because Plaintiffs admittedly continued to occupy the property after the foreclosure sale. Under Missouri law, Wells Fargo's possessory interest in the property vested at the time of the foreclosure sale. *See Hallquist v. United Home Loans, Inc.*, 715 F.3d 1040, 1047 (8th Cir. 2013); *In re Tucker*, 290 B.R. 134, 136 (Bankr. E.D. Mo. 2003) (citing Mo. Rev. Stat. § 443.290 (1939)). Although Wells Fargo did not obtain the deed to the property until November 4, 2013, the deed is merely evidence of a right of possession; the right itself "is based upon the ***fact*** of the sale." *Wells Fargo Bank, N.A. v Smith*, 392 S.W.3d 446, 462 (Mo. 2013). Plaintiffs do not allege that they did not receive the statutorily mandated notice of the impending foreclosure, and the successor trustee's deed states that such notice was provided, [Doc. # 1-4 at 2], which provides prima facie evidence that Plaintiffs received notice of the foreclosure, *see Wilson*, 409 S.W.3d at 498 ("The successor trustee's deed stated that the trustee gave notice of the foreclosure to Respondent in satisfaction of Section 443.325.3. This recital serves as *prima facie* evidence that the Respondent received notice of the foreclosure.").

As a result, Plaintiffs had constructive knowledge that they were unlawfully occupying the property as of the foreclosure sale on October 31, 2013, s*ee id.*, but nonetheless continued to occupy the premises. Furthermore, Plaintiffs concede that they continued to occupy the property for some time even after receiving Defendants' letter demanding that they vacate. [Doc. # 34 at 10]. Therefore, assuming these facts to be

true, Plaintiffs were guilty of unlawful detainer at that point in time. *See JP Morgan Chase Bank v. Tate*, 279 S.W.3d 236, 239 (Mo. Ct. App. 2009) ("JP Morgan gave notice to the Tates of the foreclosure and demanded they vacate the property, and the Tates did not vacate the property. Thus, at that time, the Tates were guilty of unlawful detainer.").

The question presented on this motion is whether Defendants nonetheless lacked probable cause as to whether Plaintiffs were refusing to surrender the property at the time the wrongful detainer action was filed. The crux of Plaintiffs' position is that they vacated the premises as soon as practicable upon receiving the November 5, 2013 letter from Kozeny and no longer occupied the premises as of November 11, 2013—the date the unlawful detainer action was filed. Plaintiffs maintain that the latter allegation in particular, that they vacated the premises prior the filing of the unlawful detainer action, is sufficient to show that Defendants lacked probable cause for the unlawful detainer suit. A number of Missouri courts have ruled, in the context of unlawful detainer actions arising from the landlord-tenant relationship, that "[a]n action in unlawful detainer is a possessory action, and possession on the date the action is filed is an essential element of such a cause of action." *Stamatiou v. El Greco Studios, Inc.*, 898 S.W.2d 571, 575 (Mo. Ct. App. 1995); *accord Cohn v. Missouri Terminal Oil Co.*, 590 S.W.2d 381, 382 (Mo. Ct. App. 1979); *Williams v. Carey*, 225 S.W.2d 157, 159 (Mo. Ct. App. 1949) (quoting *Loan v. Smith*, 76 Mo. App. 510, 511 (Mo. Ct. App. 1898)); *see also Del Commune v. Bussen*, 179 S.W.2d 744, 748 (Mo. Ct. App. 1944) ("The petition was defective in failing to allege that the premises were wrongfully detained at the time of the institution of the action.").

However, Plaintiffs' position erroneously conflates lack of occupancy with surrender of possession. Although Plaintiffs allege that they vacated the property prior to November 11, 2013, they do not allege that they took any steps indicating their intent to surrender possession, such as turning over the keys to the property. Put differently, Plaintiffs have not alleged that they gave up the ability to possess the property prior to November 11, 2013. Consequently, had Defendants visited the property on November 11 and found it to be unoccupied, they still would not have known whether the apparent dispute over possession, as demonstrated by Plaintiffs' unexplained and unlawful occupancy up to that point, persisted. *See Spalding v. Mayhall*, 27 Mo. 377, 380 (1858) ("[A]lthough he moved away, if by retaining the key he intended to hold the exclusive possession to himself, it continued in him; for actual possession does not mean that the owner must remain continually on the land.").

The dispositive question with respect to Plaintiffs' claim for malicious prosecution is not whether there was actually a dispute over the right to possess the property, but rather whether Defendants reasonably believed such a dispute existed. Where the facts are undisputed, this is a question of law for the Court. *Fust v. Francois*, 913 S.W.2d 38, 44 (Mo. Ct. App. 1995). Accepting Plaintiffs' allegations as true, the facts known to, or knowable by, Defendants were that Plaintiffs, with constructive knowledge of the foreclosure sale and the attendant loss of their possessory right, continued to occupy the property for six to ten days after the sale and for a number of days after receiving actual notice of the sale and a demand to vacate. It is unclear what additional evidence of refusal to surrender possession Defendants might reasonably have been expected to

obtain beyond Plaintiffs' continued occupancy after the foreclosure sale and receipt of the demand to vacate. Although Plaintiffs argue that they simply needed a reasonable period of time to vacate the property after receiving actual notice of the foreclosure sale, they do not allege that they made any attempt to convey this need to Defendants. Furthermore, even assuming that they had, Plaintiffs have cited no authority that suggests Defendants would have been obliged to take them at their word in this respect. The Missouri Court of Appeals has held that, immediately upon the foreclosure sale, a holdover borrower's continuing possession becomes adverse. *P.M. Const. Servs., Inc. v. Lewis*, 26 S.W.3d 284, 290 (Mo. Ct. App. 2000). Consequently, to quell any uncertainty and avoid all attempts to toll the statute of limitations, Defendants were entitled to file the unlawful detainer suit in order to immediately resolve the apparent dispute over possession. This is the very purpose of the unlawful detainer statute.

Finally, to the extent that Plaintiffs suggest Defendants were required to make a written demand for possession of the property prior to bringing an unlawful detainer action, [Doc. # 19 at 4] ("Mo. Rev. Stat. § 534.030.1 requires both a demand for possessions and a refusal to surrender possession."), this claim is contrary to Missouri law. The Missouri Court of appeals recently addressed this issue, and found that "[s]ince the nineteenth century, Missouri courts interpreting the unlawful detainer statute have unequivocally determined that the written demand requirement should apply only to the intruder class." *Wilson*, 409 S.W.3d at 498. The *Wilson* court reaffirmed this interpretation of the statute, holding that a holdover borrower is not entitled to receive written demand for the property and that "[t]he notice required for an impending

foreclosure satisfies any notice required to establish unlawful detainer against a foreclosed borrower." *Id.* at 498-99.

**B. Abuse of Process**

Defendants also argue that Plaintiffs' Amended Complaint fails to state a claim for abuse of process. To succeed on a claim for abuse of process, the plaintiff must show that: "(1) the defendant made an illegal, improper, perverted use of process, which was neither warranted nor authorized by the process; [and] (2) the defendant had an improper purpose in exercising such illegal, perverted, or improper use of process." *Diehl*, 309 S.W.3d at 320. With respect to the second element, "[t]he test is whether the process was used to accomplish some unlawful end or to compel the plaintiff to do some collateral thing that he could not be compelled to do legally." *Id.* "The difference between a claim for malicious prosecution and abuse of process is . . . the misuse of process for an end other than that which it was designed to accomplish." *Id.*

In this case, Plaintiffs have not alleged that Defendants acted with any improper purpose in filing the unlawful detainer action. Plaintiffs' sole allegation is that Defendants filed the suit "merely to expedite the foreclosure process." [Doc. # 34 at 12]; *see also* [Doc. # 19 at 3] ("The object of the civil conspiracy . . . was to . . . use the device of a complaint in unlawful detainer to expedite foreclosure proceedings, . . . ."). However, resolving immediate disputes over possessory rights following a foreclosure sale is a central purpose of the unlawful detainer statute. *E.g.*, *Wilson*, 409 S.W.3d at 495. Plaintiffs have not alleged that Defendants filed the unlawful detainer suit for any purpose other than determining the right to possession as a result of Plaintiffs' continued

occupancy of the property following the foreclosure sale. There is no allegation that suggests Defendants sought any unlawful end or to compel Plaintiffs to perform any collateral act that Plaintiffs could not be compelled to do legally. Consequently, Plaintiffs have failed to state a claim for abuse of process.

**C. Prima Facie Tort/Intentional Infliction of Emotional Distress**

Plaintiffs treat their claims for prima facie tort and intentional infliction of emotional distress as one cause of action, but these claims entail distinct elements. The elements of prima facie tort are: "(1) an intentional lawful act by defendant; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) an absence of or insufficient justification for defendant's act." *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 315 (Mo. 1993). The Missouri Supreme Court has further clarified that this "is not a duplicative remedy for claims that can be sounded in other traditionally recognized tort theories, or a catchall remedy of last resort for claims that are not otherwise salvageable under traditional causes of action." *Id.*

In this case, Plaintiffs' claim for prima facie tort is premised on the same basis as their claims for malicious prosecution and abuse of process, specifically that Defendants had no basis in law or fact for filing the unlawful detainer action. Plaintiffs have not set forth any factual allegations that might entitle them to relief under a theory of prima facie tort even if their allegations are insufficient to state a claim for malicious prosecution or abuse of process. As a result, Plaintiffs' duplicative claim for prima facie tort appears to be asserted for no purpose other than circumventing the requirements of these clearly established causes of action and is subject to dismissal on this basis. *See id.* at 316 n.9.

Furthermore, as discussed above, Plaintiffs have failed to allege that Defendants filed the unlawful detainer suit without a reasonable belief in the validity of the claim or for any improper purpose. Plaintiffs have thus failed to allege an absence of or insufficient justification for filing the unlawful detainer action and their claim for prima facie tort must, accordingly, be dismissed.

Finally, to the extent that Plaintiffs assert a claim for intentional infliction of emotional distress, they have failed to allege that Defendants' conduct was sufficiently extreme or outrageous to maintain such a claim. "[I]t is for the court to determine, in the first instance, whether the defendants [*sic*] conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Wilt v. Kan. City Area Transp. Auth.*, 629 S.W.2d 669, 671 (Mo. Ct. App. 1982). Plaintiffs' allegations show that Defendants filed suit for unlawful detainer following Plaintiffs' continued, unlawful occupancy after the foreclosure sale. The Court cannot conclude that this conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (quotation omitted). Consequently, Plaintiffs' claim for intentional infliction of emotional distress must be dismissed.

**III. Conclusion**

For the reasons set forth above, Defendants Wells Fargo Bank, N.A. and Kozeny & McCubbin, L.C.'s motion to dismiss, [Doc. # 24], is GRANTED and this case is DISMISSED, with prejudice.

/s Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 8, 2014
Jefferson City, Missouri